## Chesapeake & Ohio Railway Company v. Smith.

(Decided February 12, 1915.)

### Appeal from Carter Circuit Court.

1. Railroads—Youth Fourteen Years Old Riding on Freight Train—Assisting in Unloading Light Freight.—It is neither intrinsically hazardous or obviously dangerous for a youth fourteen years of age to assist in unloading light freight from a freight car and placing it on depot platform; nor is it necessarily hazardous or dangerous for such youth to ride on the caboose of a freight train or to be permitted to do so.

2.   Railroads—Injury to Youth in Riding on Freight Train—Action
     for Damages—Peremptory Instruction.—In an action for damages
     for injuries to a boy fourteen years old resulting from his be-
     coming frightened and jumping from a caboose of a freight train
     upon which the conductor was permitting him to ride under his
     agreement to assist in unloading light freight, the injury to the
     boy occurring while he was not engaged in handling freight
     and his riding on the caboose not being necessarily hazardous
     or dangerous, there should have been a peremptory instruction
     to find for defendant.

   SHELBY, NORTHCUTT & SHELBY, WILHOIT & WILHOIT and
H. L. WOODS for appellant.

   KOZEE & MORRIS and THEOBALD & THEOBALD for appellee.


OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Prior to December, 1913, Sam Smith, the fourteen
year old son of appellee, had been engaged as a laborer
at the brick yards at Haldeman, Ky., a place in the
eastern end of Carter County; believing that his son could
procure better wages in the same employment at
Hitchens, another point in Carter County where brick are
manufactured, his father sent him there where he had
another son employed in similar work. The boy went to
Hitchens and failed to procure employment, and desiring
to return home went to the station and seeing a freight
train going in the direction of his home and recognizing
the conductor thereof told him he desired to go back to
his father's home, whereupon the conductor told him if
he wanted to go home to get busy unloading freight. He
did then assist the train crew in unloading the freight at
Hitchens, and when the train started he got on the ca-
boose.

At a point between Hitchens and his home one or two
cars immediately in front of the caboose were derailed
by reason of the spread of the rails, and Smith becoming
frightened jumped off of the caboose and broke his leg.

This is an action by his father, the appellee, for dam-
ages by reason of the loss of services of his infant son,
wherein it is alleged that the conductor in charge of the
freight train permitted the said infant to ride on the
said freight train and to render services thereon in
handling freight, and that the said work was dangerous
and hazardous, and that the said train was not used or
equipped for carrying passengers or suitable for the
same, and that the conductor of the train knew that the

said Sam Smith was at the time under the age of twenty-one years, all of which was without the knowledge or consent of the plaintiff, and that the boy received his said injuries by reason of the carelessness and negligence of the defendant and its agents in permitting his said son, without his knowledge or consent, to ride upon said train and remain thereon.

The answer was a denial of the material allegations of the petition, and in addition pleaded that upon the occasion in question the defendant had in charge of the train mentioned a full crew, including an engineer, fireman, conductor, and three brakemen.

The jury returned a verdict for the plaintiff for $666.66 2-3 upon which judgment was entered and the company appeals.

The only question necessary to be considered is whether appellant, under the state of the pleadings and evidence, was entitled to a peremptory instruction.

The whole action is grounded upon the idea that the conductor employed the infant to do dangerous and hazardous work and permitted him to do the same in consideration of his transportation, knowing at the time of his infancy.

The boy testified that the freight he unloaded was "can goods and boxes and things," and that at the only station where they stopped previous to the accident he did not help to unload anything because "the freight was too heavy up there. They needed him at the next station, they said, where it was light."

It is perfectly manifest that unloading light freight is neither dangerous nor hazardous for a boy fourteen years old, and it is likewise apparent that the mere act of riding on a caboose of a freight train is neither dangerous nor hazardous in the ordinary sense. The boy was not injured while actually engaged in loading or unloading freight; but was injured while being permitted to ride on the caboose, which we have seen is not necessarily hazardous or dangerous.

The case of Hendrickson v. L. & N. R. R. Co., 137 Ky., 562, so confidently relied on by the appellee, is plainly distinguishable from this case. There the conductor of a freight train, knowing of the infancy, permitted the infant to use, or undertake to use, the brakes of the train, an occupation denounced by the court in that case as "intrinsically hazardous." A recovery in that case was authorized on that ground alone.

It is neither intrinsically hazardous nor obviously dangerous for a youth fourteen years of age to assist in unloading light freight from a freight car and placing it on a depot platform; nor is it necessarily hazardous or dangerous for such youth to ride on the caboose of a freight train or to be permitted to do so.

We are of opinion that under the state of the record the motion for a peremptory instruction should have prevailed.

But, under the testimony of the boy, he was in fact a passenger on the freight train; his evidence is that the conductor agreed to take him to his home-station in consideration of his assistance in loading and unloading freight. Chicago, St. Louis and New Orleans R. R. Co. v. Benedict's Admr., 154 Ky., 675.

Upon the return of the case the plaintiff will be permitted to amend his pleadings if he so desires.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.