MARGARET C. FAIRLIE, JOHN ARCHIBALD FAIRLIE, ANDREW
MILLER FAIRLIE, AGNES EDMUND RICKETTS AND ROBERT
RICKETTS, HER HUSBAND, *Plaintiffs in Error*, v. JOSEPH
W. SCOTT, JR., WARREN F. SCOTT, JOHN MURDOCK SCOTT,
CLARENCE SCOTT, EMMA W. SCOTT, ALEXINA E. HAZEL-
TON AND FRANK N. HAZELTON, HER HUSBAND, *Defen-
dants in Error*.

### Division B.

### Opinion Filed October 9, 1924.

### Petition for Rehearing Denied November 26, 1924.

1. All the points adjudicated by an appellate court upon a
   writ of error become the law of the case and are no longer
   open for consideration.

2. Where there is clear proof of actual knowledge brought
   home to a reversioner or remainderman of abandonment by
   a life tenant, as such, of his estate in the property and the
   acquisition and assertion of a *different* title thereto while
   in the actual possession thereof, adverse and hostile to that
   of the reversioner or remainderman, the statute of limita-
   tions may operate to divest the title of the reversioner or
   remainderman and vest title in the property to such adverse
   claimant.

3. A reversioner or remainderman, or his heirs, may, by their
   conduct and laches, under particular circumstances which
   warrant it, be equitably estopped from recovery in ejectment,
   after the death of the life tenant, from those in possession
   under a claim of title in fee adverse to the reversioner or
   remainderman.

4. Under the law of this State and the circumstances of this
   case, the mere failure of the four living remaindermen,
   during the life of the life tenant, to have their asserted
   rights, as remaindermen, in the property duly established

in equity, is not sufficient as an equitable estoppel. But as to the senior plaintiff, who is the father and heir of four of the remaindermen, the circumstances are different, and he should be estopped from recovering any portion of the property as against the defendants.

A Writ of Errir to the Circuit Court for Duval County, Daniel A. Simmons, Judge.

Reversed.

*Alston Cockrell, Nathan Cockrell and Knight & Adair,* for Plaintiffs in Error.

*L. S. Gaulden* and *R. E. Stillman,* for Defendants in Error.

WEST, J.—This is the second appearance of this case in this Court. On the former writ of error the judgment for defendants was reversed, Scott v. Fairlie, 81 Fla. 438, 446, 89 South. Rep. 128. The issues are stated, the proof recited and controlling principles of law are announced in the opinions filed. The general rule is recognized that the statute of limitations does not begin to run against a reversioner or remainderman until his right of possession accrues. But it has been stated that where there is clear proof of actual knowledge brought home to a reversioner or remainderman of abandonment by a life tenant, as such, of his estate in the property and the acquisition and assertion of a different title thereto by one in the actual possession thereof adverse and hostile to that of the reversioner or remainderman, the statute of limitations may operate to divest the title of the reversioner or remainderman and vest title in the property to such adverse claimant. See Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318; 21 C. J. p974. It is the law of this case. Wilson V. Fri-

denberg, 21 Fla. 386; Hoodless v. Jernigan, 51 Fla. 211, 41 South. Rep. 194; Valdosta Merc. Co. v. White, 56 Fla. 704, 47 South. Rep. 961. In other jurisdictions it has been held that possession by a life tenant or by those acquiring title and possession through him, may be construed to be adverse to the title of the reversioner or remainderman, and, when continued for the statutory period after knowledge is clearly brought home to him that the person in possession claims the entire title in his own right adverse and hostile to the title of the reversioner or remainderman or others claiming through him, may operate to vest the title in such adverse occupant. But this holding is largely, if not wholly, the result of express statutory enactments extending to parties interested in land, including a reversioner or remainderman, the right to bring actions to have their interest and rights determined and their title quieted. Ward v. Meredith, 186 Iowa, 1108, 173 N. W. Rep. 246; Neverlier v. Foster, 186 Iowa 1307, 173 N. W. Rep. 879; Criswell v. Criswell, 101 Neb. 349, 163 N. W. Rep. 302; VanMatre v. Swank, 147 Wis. 93, 131 N. W. Rep. 982; Crawford v. Meis, 123 Iowa 610, 99 N. W. Rep. 186. It is said to be analogous in principle to the rule which obtains where one joint tenant is in adverse possession of land owned in common with other joint tenants, with this difference, that a higher degree of proof of actual knowledge of such hostile claim is required against a reversioner or remainderman than is required in a case of joint tenants, Bates v. Adams, 182 Ky. 134, 206 S. W. Rep. 165.

But a remainderman takes as purcahser, and his right to possession after the death of the life tenant cannot in general be defeated by the possession of third parties claiming adversely under a mortgage or conveyance in fee by the life tenant. If, however, in the absence of a statute

expressly authorizing it, the remainderman may, during
the life of the life tenant, maintain a suit in equity to
remove, as a cloud on his title, a claim of adverse title
under a mortgage or conveyance in fee from the life ten-
ant, such remainderman or his heirs may, by their conduct
and laches and under particular circumstances warranting
it, be equitably estopped from recovering in ejectment after
the death of the life tenant from those in possession under
a claim of title in fee adverse to the remainderman. See
Woodstock Iron Co. v. Fullenwider, 87 Ala. 584, 6 South.
Rep. 197, Huey v. Brock, 207 Ala. 175, 92 South. Rep. 904.
The application by the courts of the doctrine of equitable
estoppel depends upon the circumstances of each particular
case.    Terrell v. Weymouth, 32 Fla. 255, 13 South. Rep.
429.

That the defendants below or their ancestors had im-
proved and occupied the premises since 1882 was known
to the plaintiffs; and that the defendants in possession
claimed adversely to them was, by J. W. Scott, Jr., their
father, made known to the remainderman in 1892 or 1893.
The title in fee claimed by the defendants was of record,
as also was the deed conveying a life estate to the mother
with remainder to her children, plaintiffs here, from which
latter deed the rights of all the parties are derived. See
Price V. Stratton, 45 Fla. 535, 33 South. Rep. 644. This
action was begun August 26, 1916, more than seven years
after the youngest remainderman became of age in Febru-
ary, 1909, and nearly fifteen months after the death of the
life tenant on June 5, 1915. If the remainderman, prior to
the death of the life tenant, had a right in equity to quiet
their title against the adverse and exclusive claim of title
to the entire estate by the defendants, and if the circum-
stances under which the adverse title of the defendants to
the entire state was asserted by the defendants and known

by the plaintiffs, were such as to *require* the remaindermen, to have their interests in the property established in due course of law to avoid losing their rights as remaindermen, then such facts may be shown as an equitable defense in ejectment. Sec. 2635 Rev. Gen. Stat. 1920. And the facts may be adduced under the general issue. Coram v. Palmer, 63 Fla. 116, 58 South. Rep. 721. But under the law of this State and the circumstances of this case, the mere failure of the four living remaindermen during the life of the life tenant to have their asserted rights as such remaindermen duly established in equity is not sufficient as an equitable estoppel to bar the rights of the four remaindermen under their legal title. The thirty-year statute of limitations (Sec. 2937, Rev. Gen. Stat.) is applicable to those under disabilities, not to remaindermen during the life of the life tenant.

The title of the defendants was obtained through a mortgage by the life tenant, not from an independent source; and the legal title of the remaindermen was through a deed of conveyance, not a will or by descent, and such title of the remaindermen was not subject to an equitable lien. Unlike the cases of Woodstock Iron Co. v. Fullenwider, *supra,* and Huey v. Brock, *supra,* the purchase money was not used to pay the debts that were a claim on the land, thereby giving the purchasers an equitable interest in the land. The claim of title on both sides is under a *deed of conveyance* that was of record. See Stewart v. Matheny, 66 Miss. 21, 5 South. Rep. 387; 10 R. C. L. 770; Dallas Compress Co. v. Smith 190 Ala. 423, 67 South. Rep. 289; Winters v. Powell, 180 Ala. 425, 61 South. Rep. 96; Kidd v. Borum, 181 Ala. 144; 61 South. Rep. 100; Ann. Cas. 1915C 1226; 23 R. C. L. 590; Hall v. French 165 Mo. 430, 65 South. Rep. 769. There is no statute in this State authorizing a remainderman to maintain a suit in equity

to quiet his title against the life tenant or those in possession holding through the life tenant as in Craig v. Wright, 101 Neb. 439, 163 N. W. Rep. 795; Ward v. Meredith, *supra;* Crawford v. Meis, *supra,* where the statute of limitations was applied for failure to invoke the equitable remedy expressly given by statute.

The plaintiff, J. W. Scott, Jr., claims one-half of the property as heir to four of the eight remaindermen, all of whom being his children. He not only joined his wife, the life tenant, in executing the mortgage of the entire estate for a substantial consideration, but he joined her in a quit-claim deed to the entire estate for a still larger consideration; and as he, at least since 1893, had full knowledge of the adverse claims of the defendants to the entire estate under a master's deed of conveyance made pursuant to a forclosure of the mortgage executed by him and his wife, the life tenant, such plaintiff, J. W. Scott, Jr., should, under the circumstances of this case, be estopped from recovering any portion of the property as against the defendants. See Bohrer v. Davis, 94 Neb. 367, 143 S. W. Rep. 209, 148 S. W. Rep. 320, Ann. Cas. 1915A 992. The fact that he claims as heir to deceased remaindermen does not prevent his conduct from equitably estopping him in this case.

The judgment is reversed for further proceedings not inconsistent with the views herein expressed.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.

## On Petition for Rehearing.

PER CURIAM.—The equitable estoppel against J. W. Scott, Jr., is because of his joining in a mortgage and a deed purporting to convey the entire estate in the lands in which his wife had only a life estate, and has no relation to the conveyance of an expectancy. His knowledge that the Fairlies were claiming the entire estate through a judgment sale under the mortgage served to emphasize to him the consequences of his act in joining in the execution of the mortgage. Yet, for a long period of time he took no steps to put them on notice of an intent to assert a right inconsistent with such act. After joining in the execution of the mortgage and the deed conveying the entire estate, he cannot now equitably claim against those whose claim is predicated on the mortgage as it was executed by him and his wife, but is estopped from doing so, even though his act and that of his wife in mortgaging the entire estate, when only she had a present interest therein, and that merely a life estate, do not affect the rights of their children as remaindermen.

Rehearing denied.

All concur.